### LYNCH vs. TIBBITS and MILLER.

Where the defendants, who held a chattel mortgage, prior in date to any other, upon a horse owned by the plaintiff, at the request of the plaintiff and for his accommodation, gave him a certificate stating that such mortgage was canceled, at the same time taking from the plaintiff in exchange therefor a mortgage upon other property, for the amount secured by the first mortgage; the plaintiff concealing from the defendants the fact that the property embraced in the second mortgage was already mortgaged to O., a third person, to its full value by a mortgage not then filed in the clerk's office; but such mortgage was afterwards filed, before the defendants could get their substituted mortgage on file; *it was held* that the defendants, on discovering the existence of the mortgage to O. and that it had been made a prior lien to theirs, could repudiate the cancellation of the original mortgage, on the ground of its having been procured by fraud, and take possession of the mortgaged property, by virtue of such mortgage.

APPEAL from a judgment entered upon the report of a referee. The action was brought to recover the possession of a horse, and damages for the detention. The cause was referred to a referee, and tried before him. He reported in favor of the defendants, and judgment was entered in accordance with such report. The facts are sufficiently stated in the opinion which follows.

*Jas. R. Cox*, for the appellants.

*Geo. O. Rathbun*, for the respondent.

*By the Court*, WELLES, J.   On the trial before the referee, the following facts appeared: On and prior to the month of June, 1855, the plaintiff was the owner of a certain bay horse, upon which the defendants held a chattel mortgage, dated December 14, 1854, and which was duly filed on the 7th day of February, 1855, in the clerk's office of the county of Cayuga. On the 14th of June, 1855, the defendants, at the request of the plaintiff, took from him a chattel mortgage upon certain other property belonging to the plaintiff, for the debt secured by the first mortgage, and at the same time gave him a certificate stating that the first mortgage was canceled. This change of security was made to enable the plaintiff to mortgage the bay horse as security for the purchase money of another horse,

which he was about purchasing, to work with the bay one. Previous to this, and on the 12th of June, 1855, the plaintiff had given a chattel mortgage to one O'Connor, covering the same property as that mentioned in the mortgage given by the plaintiff to the defendants on the 14th of June, 1855, also including the said bay horse; which mortgage was not filed in the proper clerk's office until after giving the second mortgage to the defendants. The first intimation the defendants had of the existence of the mortgage to O'Connor, was on the 14th of June, 1855, when Miller, one of the defendants, went to the county clerk's office with the last mentioned mortgage, for the purpose of filing it, when he discovered the mortgage to O'Connor, which had been filed a few minutes before he arrived there. It was the understanding between the plaintiff and defendants, when the mortgage of the 14th of June was given by the latter to the former and the certificate of cancellation of the mortgage of December 14, 1854, was given, that the mortgage of June 14, 1855, and the said certificate, were not to be of any force until the mortgage of December 14, 1854, on file in the clerk's office, was taken up, and that the defendant Miller and the plaintiff were to go to the clerk's office and there exchange the papers. They started together from the place where the last mortgage and the certificate of cancellation were executed, to go to the clerk's office for that purpose. Miller went, as before stated, but the plaintiff did not go there. The defendant Miller, on discovering the mortgage to O'Connor on file, refused to file the mortgage of June 14, 1855, or to exchange the papers; and repudiated the understanding as to the release and cancellation of the mortgage of December, 1854, by proceeding immediately with a certified copy of the latter mortgage to take the said bay horse from the possession of the plaintiff, which is the same taking and conversion stated in the complaint.

The referee, upon the foregoing facts, found as conclusions of law that the plaintiff by fraud induced the defendants to give the certificate of cancellation of the mortgage of December, 1854, and to take the mortgage of June 14, 1855, in lieu thereof, for the reason that at the execution of the latter mortgage the property

Lynch v. Tibbits.

covered by the same was, to the knowledge of the plaintiff, embraced in the O'Connor mortgage, which was for the full value of the property embraced by it,. and by reason of such fraud the defendants had the right to repudiate the cancellation of the mortgage of December, 1854, and did, under and by virtue thereof, rightfully take possession of the bay horse.

I incline to the opinion that the evidence justified the finding of the referee. I do not say that a mortgagor of personal property is always bound, at the peril of being charged with fraud, to disclose whether the property is incumbered. The mortgagee has means of ascertaining how the fact is. He may search the proper office, and thus protect himself against prior mortgages. He may also inquire of the mortgagor, and if he falsely asserts that none exists, it would properly be regarded, as between the parties, a strong badge of fraud. In the present case I think the conduct of the plaintiff was such as to draw upon himself the imputation of a design to mislead the defendants. The exchange of securities was at his request and for his benefit exclusively. When the last mortgage and the certificate of cancellation of the one of December, 1854, were given, it was agreed between the parties that those instruments should be of no validity until the first (that of December, 1854,) was taken up, and that the plaintiff and Miller, one of the defendants, should go together to the clerk's office and exchange the papers; by which, undoubtedly, was meant that they both should be at the clerk's office together, when they could see that all was right. Miller accordingly went, and the plaintiff, although he started in company with him, did not go there. Where he went does not appear; but it appears that a few minutes before Miller arrived at the office, O'Connor appeared and left his mortgage to be filed, and quitted the office abruptly and in haste. It seems to me the referee was at liberty to conclude, that when the plaintiff parted company with Miller, after they had started to go to the clerk's office, he went to O'Connor, who it appears from the evidence was near at hand, and gave him notice of what was going on, that he might hasten to the clerk's office and file his mortgage.

Lynch *v.* Tibbits.

Whatever may be the strict rule of law in regard to the duty of the plaintiff to give the defendants notice of O'Connor's mortgage, good faith and fair dealing required him to do so. The defendants were relinquishing a legal and valid lien upon property, which was prior to any other incumbrance, and taking other and different security for their debt, upon property already incumbered to the full amount of its value, and this known to the plaintiff, and of which he knew the defendants were ignorant; and all this, at the request and for the exclusive accommodation of the plaintiff. In view of all the evidence in this case, I am satisfied the plaintiff intended to perpetrate a fraud upon the defendants.

But it is alleged by the plaintiff's counsel that, before the defendants were at liberty to disavow and repudiate the change or substitution of the securities, they were bound to rescind the arrangement of the 14th of June, 1855; and it is contended that they have not done so. That in order to rescind the arrangement, they should, upon the discovery of the fraud, have immediately returned the last mortgage, which the case does not show they have done. It is a sufficient answer to this, that by the agreement of the parties, the new mortgage and the certificate of cancellation of the old one, was not to take effect until the plaintiff and the defendant Miller should meet at the clerk's office and exchange the papers. This has never been done, and it is through the neglect, if not for a reason less creditable to the plaintiff, that it has been omitted. When Miller discovered that O'Connor's mortgage had been filed, he refused to put the one to him and Tibbits on file. The arrangement between the plaintiff and defendants has never been consummated, and, by the agreement between them, it was to have no force until an event, which has never happened, should take place. Under such circumstances there was nothing to rescind.

The judgment should be affirmed.

Ordered accordingly.

[MONROE GENERAL TERM, March 2, 1857. *T. R. Strong, Welles* and *Smith*, Justices.]